UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FRANK R. SUNDVALL and SHIRLENE SUNDVALL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 1:07-cv-1557-SEB-TAB |
| CITY OF SHELBYVILLE, INDIANA, SHELBYVILLE BOARD OF PUBLIC WORKS AND SAFETY, SCOTT FURGESON, in his individual and official capacity as Mayor of the City of Shelbyville, Indiana, and as a member and presiding officer of the Shelbyville Board of Public Works and Safety, R. TIM BARRICK and DON BAUMGARTNER, in their individual and official capacities as members of the Shelbyville Board of Public Works and Safety, TOM DEBAUN, in his individual and official capacity as Director of the Shelbyville, Indiana, Building Commission, and TAMMY CORNELIUS, in her individual and official capacity as the Deputy Building Commissioner of the Shelbyville, Indiana, Building Commission, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS' MOTION TO DISMISS**

(Docket No. 27)

This cause is before the Court on the Motion to Dismiss [Docket No. 27] filed on

January 1, 2008, by Defendants, City of Shelbyville, Indiana; Shelbyville Board of Public

Works and Safety; Scott Furgeson (in his individual and official capacities as Mayor of

the City of Shelbyville and as a member and presiding officer of the Shelbyville Board of Public Works and Safety); R. Tim Barrick and Don Bumgartner (in their individual and official capacities as members of the Shelbyville Board of Public Works and Safety); Tom DeBaun (in his individual and official capacity as Director of the Shelbyville, Indiana, Building Commission); and Tammy Cornelius (in her individual and official capacities as the Deputy Building Commissioner of the Shelbyville, Indiana, Building Commission); pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

     Plaintiffs, Frank R. Sundvall and Shirlene Sundvall, bring their claim pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief as well as actual and punitive damages for alleged violations of their procedural due process rights as guaranteed by the Fifth Amendment to the United States Constitution as well as their substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.  Plaintiffs also allege that they have been denied due course of law, as guaranteed by Article I, §12 of the Indiana Constitution, and have been denied compensation for the taking of their property, in violation of Article I, § 21 of the Indiana Constitution.  Finally, they contend that Defendants have conspired to harm them by taking their property, depriving them of lawful income, and making them the subject of public ridicule.  For the reasons detailed in this entry, we <u>GRANT</u> Defendants' Motion to Dismiss.

## Factual Background

Plaintiffs are the equitable owners and operators of the Shelby Mobile Home Park ("Park") located in Shelbyville, Indiana.  Compl. ¶ 4.  Plaintiff Frank Sundvall holds a Mobile Home Community License issued by the Indiana State Department of Health.  Id.  On November 15, 2007, Plaintiffs submitted to a scheduled inspection by Defendant Tammy Cornelius ("Cornelius"), Deputy Building Commissioner for Shelbyville.  Id. ¶¶ 10-12.  According to Plaintiffs, without their permission, Cornelius brought Shelby County Health Inspector Robert Lewis, Sandra Hall from the Shelby County Department of Human Services, and Shelby County Commissioners David Moore and Tony Newton with her to the inspection visit.  Id. ¶ 13.  After completing the inspection, Cornelius advised the Plaintiffs that she would be in contact with them when she finished her report.  Id. ¶ 15.

When they had not heard from Cornelius four days later (November 19, 2007), Plaintiffs went to the office of Defendant, Tom DeBaun ("DeBaun"), the Director of the Shelbyville Building Commission, who told Plaintiffs that he would have Cornelius contact them when she arrived at work that day.  Id. ¶¶ 9, 18-19.  Cornelius did telephone Plaintiffs later that day at approximately 3:30 p.m. and told them that the report was not yet completed because there were some issues she had to discuss with Defendant Scott Furgeson, the Mayor of the City of Shelbyville and a member and presiding officer of the Shelbyville Board of Public Works and Safety.  Cornelius informed Plaintiffs that a meeting was scheduled for 5:00 p.m. later that day in the Mayor Furgeson's office and

Plaintiffs could attend if they wished. Id. ¶ 20. Cornelius's telephone call was the only notice Plaintiffs received regarding this meeting. Id. ¶ 21.

Plaintiffs arrived at Mayor Furgeson's office at 5:00 p.m. for the meeting and noticed the presence of several people in addition to the Mayor and Cornelius, including local officials DeBraun, Don Baumgartner ("Baumgartner"), and R. Tim Barrick ("Barrick"). Id. ¶¶ 22-24. Unbeknownst to Plaintiffs, a Public Notice had been issued pursuant to the Indiana Open Door Act, Ind. Code § 5-14-1.5-5,[1] announcing that the Shelbyville Board of Public Works and Safety ("Board") would hold a "regular meeting" at 5:30 p.m. that same evening. See Exh. B (Posted Notice for Meeting). According to Plaintiffs, Cornelius had told them nothing about the "regular meeting" in their telephone conversation. Compl. ¶ 43. The purpose of the public "pre-meeting" was to set the agenda for the Board's "regular meeting" at 5:30 p.m. Id. ¶ 26. No agenda was posted for the "pre-meeting" nor was any official record made of the "pre-meeting" proceedings. Id. ¶¶ 28, 30.

At the "pre-meeting," Mayor Furgeson, Mr. Barrick, Mr. Baumgartner and Ms. Cornelius discussed among themselves various issues pertaining to the Park, namely, the safety, health and habitability of the conditions there, and whether it should be closed down; they also reviewed photographs that Plaintiffs believe were taken during the

---

[1] We include reference to the Indiana Open Door Act, Ind. Code 5-14-1.5-1 *et seq.*, in order to accurately represent the facts as presented in the Complaint. However, Plaintiffs do not further address or develop any claim related to the Indiana Open Door Act, either as a state action or as a violation of their constitutional rights to due process. Thus, we attempt no analysis either of the referenced facts or the statute in this entry.

November 15, 2007, inspection of the Park.  Id. ¶ 31.  Although they had not received advanced notice and thus lacked time to prepare for the hearing, Plaintiffs acknowledge that they were given the opportunity to speak at the "pre-meeting," which they did.  Id. ¶ 32.  The "pre-meeting" adjourned at approximately 5:30 p.m. and, at approximately 5:40 p.m., the regular meeting of the Board convened in the chambers of the Shelbyville Common Council located across the hall from the Mayor's office.  Id. ¶ 40.

At the public meeting, after providing an oral report about the Park which included reports on some but not all of the Park's units, Mr. DeBaun, as Building Commission Director, requested that the Board "issue an order to vacate all of the units within ten days and that the property be condemned."  Exh. C (Board Meeting Minutes) at 1.  According to Plaintiffs, DeBaun's oral presentation was not made under oath, not based on his personal knowledge, not subject to cross-examination and not supported by any physical or documentary evidence.  Compl. ¶ 46.  DeBaun merely informed the Board of the existence of a thirty-three page inspection report pertaining to the properties, but no one present actually reviewed it.  See Exh. C at 2.  As occurred at the "pre-meeting," although Plaintiffs had not had time to prepare their case, Plaintiffs were again permitted to speak following DeBaun's presentation.  Id. ¶ 48.  Plaintiff Frank Sundvall told the Board that he had not personally observed any of the specific violations on any mobile home in the Park and requested that, rather than condemn the property, the Board should allow the units to be vacated to permit completion of the required improvements.  Exh. C at 1.

By a vote of 3-0, the Board, comprised of Mayor Furgeson, Mr. Barrick and Mr.

Baumgartner, approved the motion to condemn the properties and required that every unit be vacated within the ensuing ten days. Id. at 2. Plaintiffs contend that, except for merely recording the results of its vote in the November 19, 2007, meeting minutes, the Board did not issue a formal written order of condemnation. Compl. ¶ 53. However, according to Plaintiffs, the Board in fact effectuated the condemnation order primarily through the measures undertaken by Cornelius, by posting condemnation and "no trespassing" signs, securing the cancellation of utilities to the entire property, and assisting in the re-location of tenants. Id. ¶ 55.

Plaintiffs assert that the decision to condemn the Park and relocate the tenants was made not only prior to the vote by the Board at the November 19, 2007, meeting, but also prior to the November 15, 2007, inspection, as evidenced by the following: (1) in advance of the inspection held on November 15, 2007, Cornelius had contacted the Shelby County Commissioners to discuss financial assistance for the persons who might be displaced; (2) before the November 19, 2007, meeting, Cornelius had contacted the Shelby County Commissioners to discuss the possible relocation of persons who might be displaced; and (3) Cornelius invited Sandra Hall, with Shelby County Human Services, to attend the 5:00 p.m. "pre-meeting" in order to discuss the re-location of displaced Park residents prior to a vote by the Board approving the condemnation. Compl. ¶¶ 33-38.

On December 3, 2007, Plaintiffs initiated this litigation by filing their Complaint alleging that they had been denied both substantive and procedural due process, in violation of the United States Constitution. Plaintiffs further allege that they were denied

6

their due course of law rights, in violation of Article I, § 12 of the Indiana Constitution, and that they were denied just compensation for the taking of property, in violation of Article I, § 21 of the Indiana Constitution. Plaintiffs further alleged that Defendants used their public offices to "conspire" against Plaintiffs in violation of their Constitutional rights. Defendants rejoined that Plaintiffs' claims should be dismissed, either for lack of jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Legal Analysis

### I.   Standard of Review

Defendants filed their motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) requires dismissal if a court lacks subject matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1). Rule 12(b)(6) requires dismissal if a complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. Pro. 12(b)(6). "In both contexts, the district court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in favor of the plaintiff." Lewis v. Silverman, 2006 WL 2699733, at *3 (N.D. Ind. 2006) (citing Moranski v. General Motors Corp., 433 F.3d 537, 539 (7th Cir. 2005); Franzoni v. Hartmarx Corp., 300 F.3d 767, 771 (7th Cir. 2002)). When considering a motion to dismiss under Rule 12(b)(1), the district court may "properly look beyond the jurisdictional allegations of the complaint and view

whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993).

A party seeking dismissal pursuant to Rule 12(b)(6) bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1960 (2007) (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage], the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). Thus, we grant dismissal only if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic, 127 S.Ct. at 1974. Any exhibit attached to the complaint may be considered to be part of the complaint. Bean v. IPCO Corp., 838 F.2d 242, 244 (7th Cir. 1988). In assessing the sufficiency of a complaint under Rule 12(b)(6), courts follow the fairly liberal "notice pleading" standard, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

**II.    Section 1983 Claims for Damages**

In Counts I and II of their complaint, Plaintiffs allege that, as a result of the actions taken by Defendants to condemn their property, they were denied procedural (Count I) and substantive (Count II) due process, as guaranteed by the Fifth and Fourteenth

Amendments of the United States Constitution. Defendants contend that whether or not these claims ultimately are shown to have merit, at this juncture they are not yet ripe. Specifically, Defendants contend that before Plaintiffs can assert procedural and substantive due process claims related to a taking of their property, they are first required to seek relief through appropriate state channels as mandated by the decision of the Supreme Court in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson County, 473 U.S. 172 (1985).[2]

Under the Takings Clause of the Fifth Amendment, "[n]o constitutional violation occurs until just compensation has been denied," Williamson County, 473 U.S. at 195 n.13, and thus, "[t]he nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a section 1983 claim." Id. at 194 n.12. In other words, "a federal takings claim is not ripe until it is apparent that the state does not intend to pay compensation." Estate of Himelstein v. City of Fort Wayne, Indiana, 898 F.2d 573, 576 (7th Cir. 1990). Therefore, in Indiana, a plaintiff "must bring an inverse condemnation suit in the [state] courts before a takings claim will be ripe for prosecution in the federal arena." Id.; see also Daniels v. Area Plan Comm. of Allen County, 306 F.3d 445, 455 (7th Cir. 2002).

---

[2] Normally causes of action brought under 42 U.S.C. § 1983, as Plaintiffs' claims are, do not require "exhaustion" of state remedies. See Patsy v. Board of Regents, 457 U.S. 496, 516 (1982). However, "the ripeness requirements of Williamson County create a takings claim exception to Patsy's general requirement that exhaustion is not required in § 1983 suits." Peters v. Village of Clifton, 498 F.3d 727, 729 (7th Cir. 2007). Thus, litigants whose claims fall under the Williamson County exception must meet the ripeness requirements set forth by the Supreme Court prior to bringing a federal claim.

Furthermore, under Seventh Circuit precedent, this "exhaustion requirement applies with full force to due process claims (both procedural and substantive) when based on the same facts as a takings claim." Greenfield Mills, Inc. v. Macklin, 361 F.3d 934, 961 (7th Cir. 2004); see also Forseth v. Village of Sussex, 199 F.3d 363, 370 (7th Cir. 2000) (holding that a substantive due process claim which "falls within the framework for takings claims" is subject to Williamson County's exhaustion requirement); River Park, Inc. v. City of Highland Park, 23 F.3d 164, 167 (7th Cir. 1994) (holding that "a person contending that state or local regulation of the use of land has gone overboard must repair to the state court" regardless of how the claim has been labeled by a plaintiff). Because Plaintiffs allege that the Board's decision to condemn the Park constituted a taking of their property, and, as a result of which, they were denied procedural and substantive due process as guaranteed by the Fifth and Fourteenth Amendments, we find that the exhaustion requirement analysis applies here, even though Plaintiffs have not alleged a federal claim under the Takings Clause of the Fifth Amendment.[3]

Plaintiffs concede that they have not initiated an inverse condemnation claim in state court, but that their claims are nevertheless ripe for review because they are exempt from the exhaustion requirement. A number of courts, including the Seventh Circuit

---

[3] In their complaint, Plaintiffs allege that Defendants' actions constituted "a taking of the Plaintiff's property" which resulted in their being denied procedural and substantive due process of law as guaranteed by the Fifth and Fourteenth Amendments. Compl. ¶¶ 60-61, 63.

Court of Appeals, recognize a limited exception to the exhaustion requirement set forth in Williamson County when "the inverse condemnation procedure is unavailable or inadequate." Daniels, 306 F.3d at 456 (quoting Williamson, 473 U.S. at 197). Under Indiana law, "[i]nverse condemnation is the process provided by statute that allows individuals to be compensated for the loss of property interests taken for public purposes without use of the eminent domain process." Tornatta Investments, LLC v. Indiana Dep't of Transp., 879 N.E.2d 660, 663 (Ind. Ct. App. 2008). To succeed on an inverse condemnation claim, a plaintiff must show "that he or she has an interest in land that has been taken for a public use without having been appropriated under eminent domain laws." Id. at 663-64. Although not entirely clear, it appears that Plaintiffs are contending that the inverse condemnation procedure is unavailable to them because, following the Board's decision and vote to condemn Plaintiffs' property, Defendants have demonstrated no interest in returning the property to any use at all, much less to a public use. Plaintiffs contend that they would be unable to receive relief under Indiana's inverse condemnation procedure because a key element of the statute (that the land must either have been, or may be in the future, taken for a public use) cannot be satisfied in their case.

However, under Seventh Circuit law, the "availability" of a state procedure merely depends upon "whether the state courts are available to receive arguments and resolve disputes; that the federal plaintiff likely would lose on the merits in neither here nor there." SGB Financial Services, Inc. v. Consolidated City of Indianapolis-Marion County, Indiana, 235 F.3d 1036, 1039 (7th Cir. 2000). Plaintiffs concede that they have

11

not pursued their potential state remedies, much less exhausted them, and are unable to demonstrate that their claims should be excepted from the exhaustion requirement; thus, their claims are not ripe and must be dismissed.  Accordingly, we GRANT Defendants' Motion to Dismiss Count I, based on a procedural due process violation, and Count II, alleging a substantive due process violation, both without prejudice.[4]

### III. State Law Claims

#### A. Claims Brought Pursuant to the Indiana Constitution

In Counts III and IV, Plaintiffs assert claims under the Indiana Constitution.  In Count III, Plaintiffs allege that they have been denied due course of law, as guaranteed by Article I, Section 12 of the Indiana Constitution, which provides that "due course of law" is available to anyone "for injury done to him in his person, property, or reputation."  Ind. Const. Art. I, § 12.  In Count IV, Plaintiffs assert a violation of Article I, Section 21 of in the Indiana Constitution, which provides that "no person's property shall be taken by law, without just compensation."  Ind. Const. Art. I, § 21.  Defendants assert that Plaintiffs' claims under the Indiana Constitution must be dismissed because "there is no explicit language in the Indiana Constitution providing any specific remedy for violations of constitutional rights." Cantrell v. Morris, 849 N.E.2d 488, 499 (Ind. 2006).  Plaintiffs do

---

[4] Because we dismiss Plaintiffs' § 1983 claims in their entirety, we need not address Defendants' arguments as to why individual defendants should be dismissed in their official and individual capacities.

not address their state constitutional claims in their subsequent briefing and so we regard them as waived and GRANT Defendants' Motion to Dismiss Counts III and IV.

### III.    Conspiracy Claim

In Count V, Plaintiffs allege that Defendants "intentionally, maliciously, purposely, and knowingly have used their public offices to conspire and have conspired together to damage, injure and harm the Plaintiffs." Compl. ¶¶ 68-69.  It is unclear from the complaint whether Plaintiffs intend this to be a Constitutional tort claim, a claim under the Indiana Constitution, a state conspiracy claim or a federal conspiracy claim.  No citations to any authority have been provided by Plaintiffs' counsel.  In their briefing, Plaintiffs contend merely that Count V does not warrant dismissal because "the Plaintiffs assert and continue to assert that the actions and inactions of the defendants were 'intentional', etc., (Complaint, ¶ 59), effectuated under color of state law and deprived them of their property without the due process to which they were entitled."  Pls.' Resp. at 13.  Plaintiffs' response seems to be that Count V is premised on Defendants' violation of § 1983 by their conspiring with one another to deny Plaintiffs due process of law.  However, Seventh Circuit precedent makes clear that "section 1983 does not provide a cause of action for 'conspiracy to deny due process.'" Lesser v. Braniff Airways, Inc., 518 F.2d 538, 540 n.2 (7th Cir. 1975) (quoting Jennings v. Nester, 217 F.2d 153, 154 (7th Cir. 1954)).  Accordingly, we GRANT Defendants' Motion to Dismiss Count V.

13

### IV.  Conclusion

For the reasons detailed in this entry, Counts I and II are dismissed on the basis of ripeness without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).  We also <u>GRANT</u> Defendants' Motion to Dismiss Counts III through V, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Final judgment will be entered accordingly.

IT IS SO ORDERED.

Date: 09/30/2008

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Michael Roy Morow
STEPHENSON MOROW & SEMLER
mmorow@stephlaw.com

Lawrence M. Reuben
Law Offices of Lawrence M. Reuben
reuben@reubenlaw.net

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com